**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JUAN CARLOS ARANA MORENO, et al.,

    Plaintiffs,

  v.

IGNITE RESTAURANT GROUP, et al.,

    Defendants.
_____/

No. C 13-05091 SI

**ORDER GRANTING PLAINTIFFS' MOTION FOR REMAND AND REMANDING ACTION TO SAN FRANCISCO SUPERIOR COURT; DENYING PLAINTIFFS' MOTION FOR ATTORNEYS' FEES; AND DISMISSING AS MOOT PLAINTIFFS' MOTION FOR LEAVE TO AMEND**

    Plaintiffs have filed a motion to remand this action to state court and a motion for attorneys' fees incurred in bringing this motion to remand. Plaintiffs also move for leave to file an amended complaint. The motion is scheduled for a hearing on March 21, 2014. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument, and hereby VACATES the hearing. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby GRANTS plaintiffs' motion for remand and DENIES plaintiffs' motion for attorneys' fees. Because the Court finds that this action must be remanded to state court, plaintiffs' motion for leave to amend is DISMISSED as moot.

**BACKGROUND**

On August 19, 2013, plaintiffs filed a complaint in San Francisco Superior Court against Ignite Restaurant Group and Crab Addison, Inc., collectively referred to as Joe's Crab Shack ("JCS"). The complaint alleges violations of the California Labor Code, violations of the San Francisco Administrative Code, wrongful termination in violation of public policy, and violations of the Private Attorney General Act ("PAGA"). Plaintiffs' complaint states that they brought the action on behalf of themselves and on behalf of other similarly situated current and former "aggrieved employees," collectively referred to as the "kitchen staff" of JCS, located at 245 Jefferson Street, San Francisco. Compl. at ¶ 1. Plaintiffs define the other "aggrieved employees" as other non-exempt employees of defendants, hired to perform food preparation, cooking, cleaning and related duties employed during the four year period prior to the filing of the complaint. *Id.*

Plaintiffs allege twelve causes of action against defendants. The causes of action include failure to provide: (1) meal and rest breaks; (2) compensation; (3) overtime compensation; (4) reimbursement for the cost of uniforms; (5) unpaid wages and waiting time penalties; (6) itemized wage statements; and (7) sick leave. Plaintiffs also allege causes of action for (8) unfair competition; (9) civil penalties pursuant to the California Labor Code; (10) civil penalties pursuant to PAGA; (11) wrongful termination in violation of public policy regarding plaintiff Samir Roque; and (12) wrongful termination in violation of public policy regarding all plaintiffs except Samir Roque. Plaintiffs do not specify an amount of damages in regard to any of their claims.

On October 31, 2013, defendants filed a notice of removal and motion for removal to federal court under the Class Action Fairness Act of 2005 ("CAFA"), and in the alternative, pursuant to 28 U.S.C. § 1332 and § 1446(b). Docket No. 1, Notice of Removal. Plaintiffs now move to remand this case to state court for lack of subject matter jurisdiction on both grounds asserted by defendants and request that the Court award attorneys' fees and costs incurred in connection with the motion to remand. Plaintiffs also seek leave to file an amended complaint.

2

## LEGAL STANDARD

When a case "of which the district courts of the United States have original jurisdiction" is initially brought in state court, the defendant may remove it to federal court. 28 U.S.C. § 1441(a). There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, and (2) diversity jurisdiction under 28 U.S.C. § 1332. A district court has original diversity jurisdiction where the matter in controversy exceeds the sum of $75,000, and is between, inter alia, citizens of different States, or citizens of a State and citizens or subjects of a foreign state. 28 U.S.C. § 1332. A district court can also obtain original diversity jurisdiction pursuant to CAFA. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007). CAFA jurisdiction is established when (1) the complaint is a class action; (2) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (3) the aggregate number of proposed plaintiffs is 100 or greater; and (4) any member of the plaintiff class is a citizen of a State different from any defendant. 28 U.S.C. § 1332(d)(2).

A motion to remand is the proper procedure for challenging removal. Remand to state court may be ordered either for lack of subject matter jurisdiction or for any defect in removal procedure. *See* 28 U.S.C. § 1447(c). The court may remand sua sponte or on motion of a party, and the parties who invoked the federal court's removal jurisdiction have the burden of establishing federal jurisdiction. *See Enrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (U.S.1921)). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). To protect the jurisdiction of state courts, removal jurisdiction is strictly construed in favor of remand. *Harris v. Bankers Life and Cas. Co.*, 425 F.3d 689, 698 (9th Cir. 2005). Any doubt as to the right of removal must be resolved in favor of remand to state court. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

3

# DISCUSSION

## I. Federal Diversity Jurisdiction

Plaintiffs argue that federal diversity jurisdiction fails on both grounds asserted by defendants. First, plaintiffs argue that defendants fail to establish three out of the four requirements for CAFA jurisdiction. Plaintiffs argue (1) their complaint is not a class action; (2) they do not plead $5,000,000 as the amount in controversy; and (3) they do not plead of class size of 100 plaintiffs. Second, plaintiffs argue that defendants fail to establish diversity jurisdiction for the individual plaintiffs because they have not shown that the amount in controversy for each plaintiff exceeds $75,000 as required by 28 U.S.C. § 1332.

Defendants argue that removal is proper under CAFA because (1) plaintiffs' complaint is a class action brought on behalf of defendants' current and former kitchen staff; (2) the amount in controversy is at least $5,366,739; and (3) the class includes 183 current and former hourly-paid kitchen staff of JCS located at 245 Jefferson Street, San Francisco. To support these allegations, defendants submitted a declaration from Patricia Simpson, JCS's Senior Human Resources Director, providing wage and hour information regarding the kitchen staff. Defendants also include a declaration from attorney Shane Sagheb, which they use to calculate the amount at issue in plaintiffs' complaint.[1] In the alternative, defendants argue that this Court has diversity jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1446(b).

### A. CAFA Jurisdiction

#### 1. Class Action Requirement

CAFA defines the term "class action" as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure *authorizing an action* to be brought by 1 or more representative persons *as a class action.*" 28 U.S.C. § 1332(d)(1)(B) (emphasis added). "Under this definition, a suit commenced in state court is not a class action unless it is brought

---

[1] In their reply brief, plaintiffs argue that the Court should strike or disregard the Sagheb declaration pursuant to the Federal Rules of Evidence because it lacks foundation. Docket No. 22, Pls' Reply at 8. However, the Federal Rules of Evidence permit admission of calculations as long as there is proper foundation for the underlying information. *See* Fed. Rules of Evidence 1006. Since plaintiffs do not object to the underlying information, which was provided by the Simpson declaration, the Court overrules the objection to the Sagheb declaration.

4

under a state statute or rule similar to Rule 23 that authorizes an action 'as a class action.'" *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 848 (9th Cir. 2011). "At a minimum, [a similar state statute must] provide a procedure by which a member of a class whose claim is typical of all members of the class can bring an action not only on his own behalf but also on behalf of all others in the class...." *Id.* at 849.

Plaintiffs contend that they did not file this lawsuit as a class action and have never sought to have it certified as such. Docket No. 15, Pls' Motion at 9. Defendants argue that the complaint alleges class claims because the complaint repeatedly states that plaintiffs seek to "represent all kitchen staff employees" and seek "recovery for all kitchen staff employees." Docket No. 21, Opposition at 14.

Plaintiffs' complaint does not reference Federal Rule of Civil Procedure 23 ("Rule 23") or any similar state law that provides them with the mechanisms necessary to bring a class action. Rule 23 requires that class action complaints allege numerosity, commonality, and typicality of the class members. Fed. R. Civ. P. 23. State statutes that are sufficiently similar to Rule 23 also include those requirements. *Washington*, 659 F.3d at 849. Plaintiffs' complaint does not include any allegation regarding numerosity, commonality, or typicality. The only representative-type claims plaintiffs actually plead are the PAGA claims, which "are not sufficiently similar to Rule 23 to establish original jurisdiction of a federal court under CAFA." *Baumann v. Chase Investment Services, et al*, No. 2:11-cv-06667-GHK-FMO at *15 (9th Cir. 2014); *see also Sample v. Big Lots Stores, Inc*. 2010 WL 4939992 *4 (N.D. Cal. Nov. 30, 2010). Therefore, plaintiffs' complaint is not a "class action" as defined by CAFA.

### 2. Amount in Controversy

Plaintiffs argue that even if the complaint were a "class action," defendants cannot establish jurisdiction because they fail to show that the amount in controversy exceeds $5,000,000. Under CAFA, where, as here, the complaint does not plead a specific amount in controversy, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met." *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 683 (9th Cir. 2006). To meet this threshold, a removing defendant is required to set forth underlying facts to support key variables used in their calculations. *Andersen v. The Schwan Food Co.*, 2013 WL 3989562 *2 (N.D. Cal. Aug. 2, 2013) (citing

*Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). Calculations can be based on information provided on the face of the complaint as well as "summary-judgment-type evidence" such as affidavits or declarations provided by the removing defendant. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). However, a court will reject calculations that are based on speculation and conjecture as insufficient to meet the preponderance of the evidence standard. *Fong v. Regis Corp.*, 2014 WL 26996 (N.D. Cal. Jan. 2, 2014); *see also Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1002 (9th Cir. 2007), *overruled on other grounds*, *Rodriguez v. AT & T Mobility Servs*. LLC, 728 F.3d 975, 977 (9th Cir. 2013).

Defendants provide some general information about their employees, but do not provide support for many of the key variables used in their calculations. In her declaration, Patricia Simpson, JCS's Senior Human Resources Director, states that during the relevant time period, JCS employed 183 hourly-paid employees as kitchen staff at the 245 Jefferson Street location for a collective total of 7,002 weeks at an average hourly wage rate of $10.98. Docket No. 21, Exh. B, Simpson Decl. ¶¶ 7,8. Defendants use these numbers but fail to provide support for other key variables in nearly all of their calculations.

To establish the amount in controversy for plaintiffs' first cause of action, failure to provide meal and rest breaks, defendants multiply 7,002 weeks x $10.98 average hourly wage rate x 5 missed meal and rest breaks a week for a total of $384,409. Docket No. 21, Exh. A, Sagheb Decl. However, defendants do not provide any support for their assumption that during each work week all of the employees actually worked 5 days. They instead assume that all of the employees worked a 5 days a week without any evidentiary support. As a result, their calculation of $384,409 for the meal break calculation and rest break calculation is not supported by sufficient evidence to establish the amount in controversy.

To establish the amount in controversy for plaintiffs' second cause of action, failure to compensate for all hours worked, defendants multiply 7,002 work weeks x 40 hours per week x 1 hour of unpaid wages per day[2] for a total of $280,080. Defendants give no evidence to support their

---

[2] Defendants state that they quantify the 1 hour of lost wage per day by using 1 hour as the numerator and a full 8 hour day as the denominator which results in 12.5%. Defendants then state that they apply this 12.5% to the state minimum wage of $8.00 per hour to calculate the 1 hour of lost wages per day. As discussed above, defendants fail to base their use of an 8 hour day on any actual evidence

6

assumption that these employees worked 40 hours per week for each of the 7,002 weeks. They also do not support the 1 hour of unpaid wages per day used in their calculation. Defendants estimate that plaintiffs claim at least 1 hour of unpaid wages per day based on plaintiffs' alleged loss of "two 10 minute rest breaks, unpaid work of between 15 and 30 minutes and the untaken or interrupted 30 minute meal breaks." Docket No. 21, Ehx. A, Sahgeb Decl. fn. 11. Again, there is no support for the assumption that the employees worked 8 hour days that entitle them to 1 hour of breaks per day. Defendants also state that the plaintiffs' liquidated damages claim, which doubles their minimum wage claim, amounts to $280,080 more in damages. Because the minimum wage claim is itself unsupported, the liquidated damages calculation is also unsupported by evidence. Thus, defendants cannot support their calculation of $280,080 amount in controversy for the lost compensation claim or the additional $280,080 in liquidated damages.

Defendants do not provide sufficient evidence to establish the amount in controversy for plaintiffs' third cause of action, failure to provide overtime. Defendants multiply 7,002 work weeks x 2.5 overtime hours per week x $16.47 average overtime wage rate for a total of $288,307. Defendants arrive at $16.47 by multiplying the average hourly wage rate of $10.98 x 1.5, the rate of overtime pay. However, the 2.5 overtime hours is not based on sufficient evidence. Defendants state that it is based on plaintiffs' allegation that they did not record 15-30 minutes of work per day. Though they do not explain their calculation, the Court assumes that defendants multiplied 30 minutes x 5 days a week to reach 2.5 overtime hours. Here again, defendants do not provide any evidence that the employees worked 5 days a week. Thus, they do not provide sufficient evidence to establish that the amount in controversy for plaintiffs' failure to provide overtime claim is $288,307.

Defendants do not provide sufficient support for the amount in controversy for plaintiffs' fifth cause of action, the waiting time claim. Defendants multiply 154 terminated employees x 8 hours per day x $10.98 average hourly wage rate x 30 days for a total of $405,820. The Simpson declaration states that there are 154 terminated employees and that $10.98 was the average hourly wage rate paid to these employees. Thirty days is the maximum number of days for which an employer may be penalized for

---

and instead assume the hours their employees worked. Therefore, both the numerator and the denominator in their equation lack evidentiary support.

7

under the labor code for waiting time violations. Cal. Lab. Code § 203. But again, defendants do not support their assumption that the 154 terminated employees are entitled to 8 hours of pay per day. This is insufficient to establish that the amount in controversy for the waiting time claim is $405,820.

Defendants also fail to establish the amount in controversy for plaintiffs' sixth cause of action, failure to provide accurate wage statements. California Labor Code § 226 provides penalties for failure to provide accurate wage statements. Section 226 entitles a plaintiff to $50 for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000. Cal. Lab. Code § 226. Employees who worked up to 41 weeks would be entitled to the aggregate penalty of $4,000. In their calculations, defendants place employees into two groups: (1) the 23 employees who would be entitled to the $4,000 statutory maximum because they worked at least 41 pay periods; and (2) the 160 employees who are not entitled to the $4,000 maximum because they worked less than 41 pay periods.

Defendants calculate the amount in controversy for each group separately. They use the following formulas: first, they multiply 23 (employees who worked 41 weeks) x $4,000 (maximum penalty) for a total of $92,000 for the first group. Second, they calculate 160 (employees that did not work 41 weeks) x $50 (initial pay period penalty) + 1,655 (remaining paychecks) x $100 (subsequent pay period penalty) for a total of $173,500 for the second group. The Simpson declaration provides support for the number of employees in each group and the number of paychecks issued. Docket No. 21, Exh. B, Simpson Decl. ¶¶ 7,8. However, these calculations are based on the assumption that every wage statement issued over the relevant time period was inaccurate.

In the Northern District, courts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support. *Andersen*, 2013 WL 3989562 at 3; *Altamirano v. Shaw Indus., Inc.*, 2013 WL 2950600 *5-6 (N.D. Cal. June 14, 2013) (citing *Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1122 (C.D. Cal. 2010)). Defendants do not provide any support of a 100% violation rate, such as evidence based on their records or a random sampling. This is not sufficient to establish the amount in controversy by a preponderance of the evidence. *See also Weston v. Helmerich & Payne Inter. Drilling Co.,* 2013 WL 5274283 (E.D. Cal. Sept. 17, 2013) ("[b]ecause Defendant fails to provide any facts supporting the calculations based upon 100% violations, Defendant has failed to carry the burden

8

to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $5,000,000."). Thus, defendants do not support their calculation for the amount in controversy for either group.

Defendants calculate plaintiffs' individual termination claims by multiplying the 9 plaintiffs x $75,000, the amount defendants contend is in controversy for each of the plaintiffs, for a total of $675,000. However, as discussed in detail below, defendants do not provide sufficient evidence to establish a $75,000 amount in controversy for the individual plaintiffs. This number also cannot be used to establish the CAFA minimum.

Attorneys' fees can also constitute part of the amount in controversy when they are provided by an underlying law. *Guglielmino v. McKee Foods, Inc*., 506 F.3d 696, 699 (9th Cir. 2007). Defendants include plaintiffs' attorneys' fees in the total amount in controversy. Defendants calculate attorneys' fees by multiplying an aggregate of $3,753,435 in damages x 25% which they contend is the percentage typically awarded for attorneys fees, for a total of $938, 358. However, since defendants fail to provide support for the calculations of plaintiffs' underlying claims, a calculation of attorneys' fees would necessarily be based upon the unsubstantiated assumptions made by defendants in their other calculations. *See Anderson*, 2013 WL 3989562 at * 6. Thus, the attorneys' fees calculation of $938,358 cannot be used to calculate the amount in controversy.

Defendants argue that the total amount in controversy is at least $5,366,739. Docket No. 21, Exh. A, Sagheb Decl. The aggregate total of the unsupported calculations listed above accounts for $3,901,963.[3] Taking the $5,366,739 less the $3,901,963, defendants at most establish a $1,464,830 amount in controversy. Accordingly, defendants fall far short of establishing by a preponderance of the evidence that the amount in controversy exceeds $5,000,000.

---

[3] First cause of action, $384,409 meal damages + $384,409 rest break damages = $768,818; Second cause of action, $280,080 + $280,080 in liquidated damages = $560,160; Third cause of action, $288,307; Fifth cause of action, $405,820; Sixth cause of action, $92,000 group 1 + $173,500 group 2 = $265,500; Individual termination claims, $675,000; Attorneys' Fees, $938,358. These figures together account for a total of $3,901,963 in unsupported calculations.

9

### 3. Numerosity

Plaintiffs argue that even if defendants could establish the other requirements they have not shown that there are over 100 class members as required by CAFA. Docket No. 15, Pls' Motion at 10; 28 U.S.C. § 1332(d)(2). Plaintiffs contend that defendants mischaracterize their complaint in the motion to remand by including all of the JCS employees in the state of California to establish that there are more than 100 class members. Plaintiffs are correct that, in their notice of removal, defendants erroneously based class membership on all JCS employees in California. Docket No. 1, Notice of Removal at 3. However, defendants later provided the Court with the Simpson declaration stating that the JCS, located at 245 Jefferson St., San Francisco, employed 183 hourly-paid kitchen staff during the relevant time period. Docket No. 21, Exh. B, Simpson Decl. at ¶ 7. Because the Court may consider summary-judgment-type evidence – such as the Simpson declaration – in addition to the notice of removal, defendants sufficiently establish that the number of class members would be above 100 in a class action regarding the San Francisco location. *See Valdez*, 372 F.3d at 1117.

### 4. Minimal Diversity

The parties do not dispute that there is diversity pursuant to CAFA. CAFA only requires minimal diversity of the parties, such that "any member of the plaintiff class is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). In her declaration, Patricia Simpson indicates that defendants are citizens of Houston, Texas. Docket No. 21, Exh B. Simpson Decl. at 2. In their complaint, plaintiffs allege that they are citizens of the state of California. Compl. ¶ 3. Therefore, CAFA's minimal diversity requirement is met.

Defendants fail to establish two out of the four prerequisites to CAFA jurisdiction. Accordingly, the Court does not have original jurisdiction pursuant to CAFA.

### B. Diversity Jurisdiction

In the alternative to CAFA jurisdiction, defendants argue that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. A district court has diversity jurisdiction where the matter in controversy exceeds the sum of $75,000 and is between, inter alia, citizens of different States, or citizens of a State

10

and citizens or subjects of a foreign state. 28 U.S.C. § 1332. The parties do not contest that there is diversity of citizenship; however, plaintiffs argue that the defendants have not established that the amount in controversy for each plaintiff exceeds $75,000. Docket No. 15, Pls' Motion at 12; Docket No. 21, Opposition at 17.

Where, as here, the amount in controversy is in dispute and it is unclear from the face of the complaint, "the removing [party] bears the burden of establishing, by a preponderance of the evidence," that the amount in controversy exceeds the jurisdictional threshold. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). To determine if a defendant satisfies the preponderance of the evidence standard, the Ninth Circuit endorses the practice of "considering facts presented in the removal petition as well as any summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-91 (9th Cir. 2003) (internal citations omitted). "In the absence of any papers suggesting [a] claim will yield an adequate amount in controversy, [a court] will not speculate as to the damages potentially embodied in plaintiffs' vague request. . ." *Miller v. Michigan Millers Ins. Co.*, 1997 WL 136242 at *5 (N.D. Cal. Mar. 12, 1997); *see also Arita v. Rite Aid Corp.*, 2014 WL 358400 (C.D. Cal. Jan. 31, 2014).

Defendants contend that "the amount in controversy exceeds $75,000 for each of the individual plaintiffs in light of their request for lost wages, damages for emotional distress and attorney's fees." *Id.* However, defendants do not support this allegation with evidence that the value of the individual claims would actually exceed $75,000.[4]

In their opposition brief, defendants argue that the amount in controversy is satisfied without a need for further analysis simply because plaintiffs allege emotional distress and punitive damages.

---

[4] Defendants include a calculation estimating damages for plaintiff Liborio Chan, the plaintiff with the lowest number of work weeks. Docket No. 21, Exhibit B, Sagheb Decl. Defendants contend that Chan seeks approximately $24,000 for wage and hour violations and up to $17,160 in back pay up to the date of removal, but do not provide support for the days and hours used in the calculations. *Id.* Defendants also include $22,880 of lost wages estimated from the time of removal to the anticipated date of trial. In *Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1032 (N.D. Cal. 2002), the court declined to project future lost wages from the time of removal to the time of trial in assessing the amount in controversy. Enhanced by the fact that the calculations are partially based on assumptions, this Court also declines to project future lost wages to calculate the amount in controversy. Without more, this calculation does not aid defendants in establishing that the amount in controversy for any individual plaintiff exceeds $75,000.

11

Docket No. 21, Opposition at 19. Although defendants are correct that emotional distress and punitive damages may be considered in the amount in controversy, without any evidence supporting what that the claims will yield, courts "will not speculate as to the damages potentially embodied in plaintiffs' vague request. . ." *Miller* 1997 WL 136242 at *5 (N.D. Cal. Mar. 12, 1997). Contrary to defendants' contention in their opposition brief, the court in *James v. Childtime Childcare, Inc*, 2007 WL 1589543 at *2 (E.D. Cal. June 1, 2007), did not simply base its findings on the nature of the claims alleged in the complaint. In *James*, the court found that the amount in controversy exceeded $75,000 based on a settlement letter where the plaintiff offered to settle the case for $104,000. *Id.* ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."). Unlike the defendant in *James*, the defendants here do not provide the Court with any evidence relevant to the potential damages in this case.

In *Arita v. Rite Aid Corp*., 2014 WL 358400 at *2 (C.D. Cal. Jan. 31, 2014), the defendant provided the court with examples of cases where emotional distress claims resulted in damage awards in excess of $75,000. However, the *Arita* court held that the defendant did not establish the amount in controversy by a preponderance of the evidence because it "did not adequately explain how those claims and fact patterns were similar to this case." *Id*. Here, defendants have not even attempted to provide the Court with a jury award indicating what the emotional distress or punitive damage claims may yield, let alone explain how a case resulting in an award over $75,000 is sufficiently similar to this case.

Defendants do not provide the Court with any basis to establish the amount of in controversy for the emotional distress or punitive damage claims. Even though defendants have access to information regarding the plaintiffs' hours worked and wages earned, they have not provided it to the Court to establish the value of plaintiffs' wage and hour claims. Therefore, defendants fail to establish that the amount in controversy for the individual plaintiffs exceeds $75,000. Accordingly, the Court does not have diversity jurisdiction pursuant to 28 U.S.C. § 1332.

Because the Court does not have jurisdiction pursuant to CAFA or 28 U.S.C. § 1332 the Court GRANTS plaintiffs' motion to remand.

## II. Request for Attorneys' Fees and Costs

Plaintiffs also seek an award of the attorneys' fees and costs incurred in bringing the motion to remand. Pursuant to 28 U.S.C. § 1447(c),"[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has held that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court finds that defendant did not lack an objectively reasonable basis for seeking removal. Thus, the imposition of attorneys' fees and costs upon defendants is not warranted, and plaintiffs' motion is DENIED.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiffs' motion to remand; REMANDS this action to the San Francisco Superior Court; and DENIES plaintiffs' motion for attorneys' fees. Having found that this action must be remanded to state court, plaintiffs' motion for leave to amend is DISMISSED as moot.

**IT IS SO ORDERED.**

Dated: March 20, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE